IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                                                           CASE NO. 04-CR-1312-RB

ALBERTO BECERRA, et al.

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on four defense motions heard on March 3rd, 2005. The four motions at issue are: 1) Defendant Francisco Huerta-Varela's ("Huerta-Varela") motion for revocation of detention order; 2) Defendant Abraham Amaya's ("Amaya") motion to dismiss the Indictment with prejudice; 3) Amaya's motion to suppress; and 4) Huerta-Varela's motion to suppress. For the following reasons the Court will **DENY** Huerta-Varela's motion for revocation of detention order and Amaya's motion to dismiss the Indictment. The Court will **DENY** Amaya's motion to suppress, but will **GRANT** Huerta-Varela's motion to suppress.

First, Huerta-Varela argues that he should not be detained since he has no prior criminal convictions, he can obtain full time employment, and will abide by all terms and conditions set by the Court. Huerta-Varela's conditions of release after posting bond were revoked, however, when he admitted using a controlled substance while under pretrial supervision. Because Huerta-Varela violated the conditions of release, his motion for revocation should be denied only "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). No such showing has been made in this case. The Court will, therefore,



DENY his motion for revocation of detention order.

Second, Amaya moves to dismiss the Indictment with prejudice since the prior Government motion to dismiss the Indictment without prejudice was made because the Government knew it would lose Amaya's motion to suppress. Amaya cites to *Glover v. U.S.*, 531 U.S. 198, 203-04 (2001), where the Court held that an increase in prison sentence is constitutionally significant for determining prejudice under the Sixth Amendment ineffective assistance of counsel analysis. This case is inapplicable here.

Rule 48(a) of the Federal Rules of Criminal Procedure provides that "[t]he government may, with leave of court, dismiss an indictment . . . ." The rule only requires a defendant's concurrence to dismiss an Indictment if the Government seeks to dismiss the prosecution *during trial*. *Id.*; *United States v. Derr*, 726 F.2d 617, 618 (10th Cir. 1984). To honor the purpose of the rule, "the trial court . . . must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision." *Id.* at 619.

In *Derr*, the Tenth Circuit found that the Court did not abuse its discretion in dismissing a subsequent indictment. *Id.* However, the court in *Derr* limited its holding to the facts of that case: the Government moved to dismiss the original Indictment on the day trial was to begin, the only reason given by the Government for dismissal was that it would "best meet the ends of justice," the Government later admitted that the reason it moved to dismiss the case was that it was unprepared for trial, and the subsequent Indictment was not brought until more than two years after the first Indictment was dismissed. *Id.*

In this case, the Government moved to dismiss the original Indictment well before trial was to begin. The Government moved to have the Indictment dismissed without prejudice because "the

2

testimony of a confidential source will be needed at trial and, for investigative reasons, the United States is not able to disclose the identity of the confidential source at this time." (Doc. No. 38.) Furthermore, the subsequent Indictment was brought only 3 months after the original Indictment. The Tenth Circuit has affirmed the district court's refusal to dismiss the subsequent Indictment where the defendant was re-indicted shortly after the first one was dismissed and where the court found the government's reasons for dismissal of the first Indictment were valid. *See United States v. Strayer*, 846 F.2d 1262, 1266 (10th Cir. 1988). The Court in this case was aware of the factual basis for the Government's decision to dismiss the original Indictment since it issued the order granting the wiretap, and the Court was aware of the basis for the Government's decision to dismiss the case (to protect the CS and preserve the investigation). The Court, therefore, will DENY Amaya's motion to dismiss the Indictment with prejudice.

Third, both Amaya's and Huerta-Varela's motions to suppress derive from the execution of a search warrant signed by U.S. Magistrate Judge Karen B. Molzen on April 6, 2004. Pursuant to the search warrant, law enforcement agents searched a car driven by Amaya, that was parked on Huerta-Varela's property, and contained 4 pounds of methamphetamine. Both Amaya and Huerta-Varela contend that the search warrant lacked probable cause because the affidavit in support of the warrant i) failed to demonstrate the informants' veracity, reliability and basis of knowledge; and ii) failed to establish a nexus between evidence of a crime and either Amaya's car or Huerta-Varela's house at 7018 LaVanne, Hagerman, New Mexico. The Government argues that the affidavit contains sufficient evidence to establish probable cause and that the "good faith exception" articulated in *United States v. Leon* applies even if the affidavit lacked probable cause.

3

**1. Probable cause for Amaya's vehicle.**

A magistrate judge's decision to issue a warrant is entitled to "great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The Court determines whether a warrant was issued based on probable cause by examining the "totality of the circumstances" in the affidavit, which includes the informants' veracity and basis of knowledge. *Id.* at 238. Moreover, probable cause requires a nexus between the suspected criminal activity and the place to be searched. *U.S. v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990). In other words, a reviewing court must assure itself that "the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (internal citations omitted).

Agent Murphy noted in the affidavit attached to the warrant that he had received information from confidential source #1 ("CS-1") during January through March 2004 that Alberto Becerra ("Becerra") had been trafficking methamphetamine near Roswell and that a group operating out of the El Paso/Juarez area supplied Becerra with methamphetamine. On April 6, 2004, Agent Murphy received information from confidential source #2 ("CS-2," the wiretap on Lopez's phone) that Becerra would be receiving a large quantity of methamphetamine from an "unknown individual" in Roswell that day. Agents observed Becerra meet with an unknown individual at a hotel in Roswell around noon. Becerra drove his vehicle from the hotel and the unknown man followed in a second vehicle with Texas plates. This corroborated CS-1's statements to officers that a group operating out of the El Paso/Juarez area supplied Becerra with narcotics. The two vehicles drove in tandem to a second location in Hagerman, NM, where another individual looked under the vehicle with Texas plates. The two vehicles then departed for 400 Kansas in Hagerman where they remained for five hours.

4

Then, the driver of the vehicle with Texas plates (Amaya) left with an unknown man (named Sigala) who had previously ridden with Becerra and drove to 7018 LaVanne in Hagerman and pulled the vehicle into the garage. Agents then secured the residence, which Huerta-Varela owned. The other information contained in the affidavit was Agent Murphy's statements that: 1) "I believe this pattern of action to be consistent with a narcotics transaction when large quantities of narcotics are being delivered;" and 2) "Both CS1 and CS2 have provided reliable information in the past that has been corroborated through other means."

Although the Supreme Court has held that "a bare statement by an affiant that he believed the informant to be truthful would not, in itself, provide a factual basis for crediting the report of an unnamed informant," the other facts contained in the affidavit support the magistrate judge's finding of probable cause with respect to Amaya's vehicle. *United States v. Harris*, 403 U.S. 573, 579 (1971). The affiant in this case, DEA Agent Mike Murphy, had 12 years of law enforcement experience, including 6 years with the DEA, at the time he signed the affidavit. With respect to the reliability, veracity, and basis of knowledge of the informants, CS-1 told law enforcement officials that Becerra was part of a drug ring operating out of the El Paso/Juarez area. CS-2 informed officials that Becerra was to receive a shipment of methamphetamine from an unknown individual in Roswell on a specific date, April 6, 2004. On that date, Becerra met with an unknown individual driving a vehicle with Texas plates at a hotel in Roswell. This corroborated the information provided by CS-1 and CS-2.

Then, Becerra and Amaya, the driver of the vehicle with Texas plates, drove in tandem to a second location where another individual inspected the underside of Amaya's vehicle. The two vehicles then continued to drive together to another location before arriving together at Huerta-

5

Varela's house at 7018 LaVanne in Hagerman. Agent Murphy's observations that the two vehicles drove in tandem to four separate locations over a period of eight hours, and stopped at one point to allow another individual to look under Amaya's vehicle, were "consistent with a narcotics transaction when large quantities of narcotics are being delivered." Giving "great deference" to Judge Molzen's determination of probable cause, the warrant and affidavit corroborated the information given to law enforcement officials by two confidential sources and provided a sufficient nexus between Amaya's vehicle and the trafficking of methamphetamine. Under the "totality of the circumstances," therefore, the warrant and affidavit established probable cause to search Amaya's vehicle, where law enforcement officials discovered four pounds of methamphetamine. Even if the warrant and affidavit lacked probable cause to search Amaya's vehicle, however, law enforcement officials relied on the validity of the warrant in good faith.

### 2. The "Good Faith Exception."

A reviewing court has discretion to either address probable cause or proceed directly to a good faith analysis. *United States v. Rowland*, 145 F.3d 1194, 1206 n.8 (10th Cir. 1998). In general, where agents rely in good faith upon a search warrant issued by a neutral magistrate, the Court should not suppress any evidence seized pursuant to the warrant. *United States v. Leon*, 468 U.S. 897 (1984). There are four situations where the good faith exception does not apply: 1) where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" 2) where the magistrate wholly abandoned his [or her] judicial role;" 3) where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and 4) where the warrant was "so facially deficient--i.e., in failing to particularize the place to be searched or the things to be

seized--that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. Where information is omitted out of "negligence or innocent mistake," a defendant can not overcome a finding of good faith. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Of the four *Leon* exceptions to good faith the only one at issue is whether the affidavit was so lacking in probable cause with respect to Amaya's vehicle as to render belief in its existence totally unreasonable.

Since officers are presumed to have a reasonable knowledge of the law, we determine good faith by considering whether a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. The Tenth Circuit has held that "the reviewing court must examine the text of the warrant and the affidavit to ascertain whether the officers might have reasonably presume[d] it to be valid." *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993). Therefore, the issue is whether or not an affidavit supporting a search warrant is "devoid of factual support, not merely whether the facts they contain are legally sufficient." *Id.*

The Tenth Circuit recently held that "good faith may exist when a *minimal nexus* between the place to be searched and the suspected criminal activity is established." *United States v. Roberto Gonzales*, p. 10 (soon to be published). Agent Murphy presented his affidavit along with a warrant to an assistant United States attorney and then to a neutral magistrate, both of whom believed probable cause existed with respect to Amaya's vehicle. The facts contained in the affidavit support at least a "minimal nexus" between Amaya's vehicle and the suspected criminal activity--trafficking in methamphetamine. Therefore, because the warrant and affidavit are not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the Court will not suppress the evidence seized from Amaya's vehicle. *Leon*, 468 U.S. at 923. The same cannot be

7

said, however, with respect to Huerta-Varela's house at 7018 LaVanne.

### 3. Huerta-Varela's motion to suppress.

The affidavit lacked probable cause with respect to Huerta-Varela's house at 7018 LaVanne. The only mention of Huerta-Varela in the affidavit is in paragraph 2, as owner of the property at 7018 LaVanne where the drugs were found (in Amaya's car) but he is in no other way implicated in a drug transaction. Neither CS-1 or CS-2 provided any information linking Huerta-Varela's house with Becerra and narcotics trafficking. The two confidential sources informed law enforcement officials that Becerra was expecting a shipment of drugs on April 6, 2004 *in Roswell*. Huerta-Varela's house is located in Hagerman. The only nexus the affidavit contained with respect to the house was that agents observed a suspicious pattern of driving before Becerra and Amaya arrived at Huerta-Varela's house. The affidavit, therefore, lacked probable cause because it failed to establish the requisite nexus between the methamphetamine to be seized and the property at 7018 LaVanne.

When this nexus is "wholly absent, the affidavit and resulting warrant are 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Gonzales* at 11 (quoting *Leon*). Although the affidavit established probable cause with respect to Becerra and Amaya's vehicle, it provided no nexus between methamphetamine trafficking and the residence at 7018 LaVanne in Hagerman. The "good faith exception," therefore, does not apply to Huerta-Varela's house. The Court will GRANT Huerta-Varela's motion to suppress.

THE COURT HEREBY DENIES Huerta-Varela's motion for revocation of detention order, Amaya's motion to dismiss the Indictment, and Amaya's motion to suppress. THE COURT HEREBY GRANTS Huerta-Varela's motion to suppress.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE